IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

KEDEN FULLER, Individually and on
behalf of all others similarly situated,

CASE NO: _____

      Plaintiff,

CLASS ACTION

v.

USAA GENERAL INDEMNITY COMPANY,

      Defendant.

_____/

**CLASS ACTION COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

Plaintiff Keden Fuller ("Plaintiff" or "Fuller") on behalf of himself and all others similarly situated, files this Class Action Complaint against USAA General Indemnity Company ("Defendant" or "USAA"), and asserts upon personal knowledge as to his own acts and status, and upon information and belief as to all other matters, the following allegations:

## I.      NATURE OF THE ACTION

1.     This is a class action lawsuit by Plaintiff Fuller, who was an insured first party total loss claimant under USAA's policy of insurance (the "Policy") for private passenger auto ("PPA") physical damage. Plaintiff Fuller brings his claims on behalf of himself and a class of USAA first party total loss insureds for USAA's failure to pay Plaintiff and putative class members ("Class Members") amounts due under the Car Replacement Assistance ("CRA") endorsement of the Policy. Plaintiff and all Class Members were insured for total losses under policies ("Policies") and CRA endorsements with the same material language.

**USAA Pays for the Full Value of the Total Loss Vehicle**
**Under Its Comprehensive and Collision Coverage**

2.       USAA's Policy requires it to pay a vehicle's "actual cash value" ("ACV") on total loss covered claims. Ex. A, USAA Policy at 23. The ACV is the value of the total loss vehicle at the time of loss and is defined as "the amount that it would cost, at the time of loss, to buy a comparable vehicle." *Id.* at 21. When determining the ACV, USAA engages a third-party vendor to perform a market valuation analysis to determine the value of the vehicle (including sales tax). The ACV includes the value of the vehicle; and it is paid on total losses because the purpose of insurance is to compensate insureds for their losses (minus the deductible).

3.       The ACV is the maximum amount that USAA is required to pay on a total loss physical damage claim. *Id.* at 23, Policy Limitation of Liability Provision.  When an insured totals a vehicle and makes a covered claim for the total loss, USAA pays the ACV.

4.       USAA's Policy includes a "Loss Payable Clause" providing that "Loss or damage under this policy will be paid, as interest may appear, to the named insured and the loss payee shown on the Declarations."  This makes sense because payments for "loss or damage" are payments for the loss of the vehicle, and lienholders have a security interest limited to the value of the total loss vehicle, which is collateral.  This security interest is represented on the total loss vehicle's certificate of title.

5.       Florida law provides that lienholders have a security interest in total loss vehicles if evidenced in the certificate of title. Fla. Stat. § 679.2031.  The total loss vehicles are the collateral of the security interest.  *Id.*  Under Florida law, a holder of a security interest has a claim to collateral proceeds only "[t]o the extent of the value of collateral." Fla. Stat. § 679.3151 (secured party entitled to collateral proceeds); Fla. Stat. § 679.1021(1)(lll) (collateral proceeds from

insurance is limited to the value of the collateral).  The law in each of the 50 states has materially identical provisions relating to security interests and collateral.

6.      The payment of the ACV (the full value) to lienholders thus includes payment of the full amount to which the lienholder is entitled.

7.      USAA breaches its Policies by paying the lienholders in excess of the amounts they are permitted to recover under Florida law and the law of each of the 50 states.  These excess payments are in the form of CRA.

**USAA Offers CRA Above the Value of the Total Loss Vehicle**

8.      USAA offers CRA, which is a "feature" of Plaintiff's and each Class Members' Policies.

9.      CRA is USAA's promise to make a separate and additional payment of 20% of the ACV of the total loss vehicle to assist the insured with purchasing a replacement vehicle. The CRA payment is not to cover the loss or value of Plaintiff's vehicle, or indemnify Plaintiff for the loss, damage, vehicle value, or actual cash value.  Instead, the payment is to make sure that Plaintiff will have sufficient funds to purchase a replacement vehicle. As the name suggests, CRA's purpose is to "assist" the insured with "replacing" the totaled "car." Ex. B, Car Replacement Assistance Endorsement (Form A402FL(01) 08-14 at 2 of 3).

10.     The CRA has its own declarations page and is not shown on the declarations page that includes coverage for loss or damage to the vehicle.  Ex. C, Declarations Pages, showing CRA in separate "Features Declaration".

11.     The CRA endorsement states that the 20% payment is "separate from the limit available for loss to [the] covered auto under Comprehensive Coverage or Collision." Ex. B at 2 of 3.  USAA has admitted and explained that CRA "is separate from comprehensive and collision

coverage." This is an important distinction because comprehensive and collision coverage are the Policy provisions that cover the loss or damage to the total loss vehicle.  Ex. A at 21-22.

12.     CRA thus does *not* insure the total loss vehicle, does not compensate for *any* of the loss to the vehicle, and is not a payment for the value of the vehicle.  In this respect, CRA is no different from other provisions of insurance that may apply to the collision (such as towing coverage, vehicle contents, rental coverage, medical payments insurance, or uninsured motorist bodily injury coverage).

13.     USAA has admitted in federal court filings that "Car Replacement Assistance ("CRA") coverage is completely separate and above ACV." *Aguilar v. USAA General Indemnity*, 6:19-cv-00866-CEM-EJK (MD Fla. Sept 9, 2019), Reply in Support of Motion to Dismiss (Doc. 33 at 9).  The use of the term "coverage" by USAA to apply to CRA is misleading because CRA is not paid to cover the insured loss; it is instead a promise to pay an amount in addition to the loss to assist in the replacement of the insured vehicle.

### Payment of the CRA to Lienholders Is Not Permitted by the Policy or the Uniform Commercial Code in Florida and Each of the 50 States

14.     Because the CRA is completely separate from and *above* funds that cover the full value of the vehicle and from loss payments that are the subject of the loss payment clause, USAA is not permitted to make such payments to lienholders.  Neither Florida law nor the law of any other state permits a lienholder to recover on a security interest amounts from insurance that are *greater* than the value of the vehicle. Fla. Stat. § 679.3151 (secured party entitled to collateral proceeds); Fla. Stat. § 679.1021(1)(lll) (collateral proceeds from insurance is limited to the value of the collateral).

15.     The Policy also does not permit USAA to make CRA payments to lienholders because such amounts are in excess of the value of the collateral.  Unlike the express provision in

the Policy permitting USAA to make payments for "loss or damage" to lienholders, USAA includes no such "Loss Payable Clause" relating to CRA. This makes sense because CRA includes only amounts greater than and "completely separate and above" the value of the vehicle. CRA cannot be paid to a lienholder because the CRA is a payment for amounts greater than the value of the collateral.

16.     Despite the dictates of secured interests and the lack of authority in the Policy to pay CRA to lienholders, USAA routinely pays CRA payments to lienholders.

17.     USAA breaches its Policy to Plaintiff and Class Members by paying CRA payments to total loss vehicle lienholders instead of the insureds.

18.     This lawsuit is brought on behalf of Plaintiff and a class of USAA insureds who were not paid full CRA payments in conjunction with their first party total loss claims.

19.     Liability and damages in this Class Action involve an insurance policy dispute with material issues solely of policy interpretation and include no disputed issues of fact relating to vehicle valuation.

## II.     JURISDICTION AND VENUE

20.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (a) the Plaintiff is a member of the putative classes which consist of at least 100 members and Plaintiff and USAA are citizens of different states; (b) the amount-in-controversy exceeds $5 million dollars exclusive of interest and costs; and (c) none of the exceptions under § 1332 apply to this claim.

21.     Venue is proper in this Court because a substantial portion of the acts and course of conduct giving rise to the claims alleged occurred within the district and USAA is subject to personal jurisdiction in this district. This lawsuit arises from a total loss that occurred in Broward

County, Fort Lauderdale, Florida relating to property that was located, maintained, and garaged in Broward County, Fort Lauderdale, Florida.

### III.    THE PARTIES

**A.  Named Plaintiff.**

22.    Plaintiff Keden Fuller is an adult who, at all relevant times, resided in and was domiciled in Dade County, Florida.  The property that is the subject of this lawsuit was maintained, garaged, and located in Broward County, Fort Lauderdale, Florida. Ex. C, Declarations Pages at 1 (vehicles under the policy are garaged in Fort Lauderdale, Florida 33311-6628).  The total loss giving rise to this claim occurred in Broward County, Fort Lauderdale, Florida.

**B.  USAA.**

23.    USAA is an insurance company incorporated in and with its principal place of business in Texas.

24.    USAA's Florida registered agent for service of process is the Chief Financial Officer, Florida Department of Financial Services, 200 E. Gaines Street, Tallahassee, Florida 32399.

25.    USAA is a wholly owned subsidiary of United Services Automobile Association and is a member of the USAA Group.

26.    In 2017, USAA collected over $303 million in PPA insurance premiums in Florida.

**C.  Corporate Affiliation.**

27.    USAA holds itself out and identifies itself to the Florida Office of Insurance Regulation ("FOIR") as part of the USAA Group.

28.    Since November 16, 2005, USAA has made joint filings with other USAA Group insurers (under the "USAA" brand) with FOIR for approval of PPA physical damage insurance

policies. USAA has shared principal office addresses, shared registered agents and officers, and used the same insurance policy and claim adjustment forms as other entities that are part of the USAA Group.

29.     USAA issues CRA in Florida and each of the 50 states requiring in the event of a total loss that USAA make a CRA payment to its insured in the amount of 20% of the ACV of the insured vehicle.  The Policies define ACV as the "cost, at the time of loss, to buy a comparable vehicle." Ex. A at 21.

30.     According to the National Association of Insurance Commissioners, USAA Group, of which USAA is a part, is one of the top five largest providers of PPA insurance in the United States.  In 2017, according to the FOIR Annual Report 2018, USAA wrote over $303 million in PPA premiums in Florida.

## IV.     FACTS

### A.  USAA Issued a PPA Physical Damage Policy to Plaintiff.

31.     Plaintiff Fuller entered a PPA physical damage policy agreement (policy number 02395 06 49G 7101) to be insured by USAA under policy form 5100FL(02) which was in full force and effect on July 22, 2019. Ex. A, Policy form; Ex. C, Declarations Page.

32.     The policy provided physical damage coverage for Plaintiff Fuller's 2011 BMW 5 Series, VIN WBAFR7C5XBC805275 (the "Fuller Insured Vehicle").  The controlling terms of Plaintiff's insurance policy are set out at Exhibit A. A copy of the policy declaration for Plaintiff is attached hereto as Exhibit C.

33.     Plaintiff Fuller also purchased from USAA a "Car Replacement Assistance Endorsement" on form A402FL(01) ("CRA Endorsement"), and USAA issued Plaintiff a "Features Declaration" stating that Fuller's policy included CRA.  *Id.*

- 7 -

34.     USAA has issued Florida PPA physical damage policies under policy form 5100FL (02) since October 2012.  USAA has issued PPA physical damage policies in each of the 50 states with policy terms that are materially identical relating to total loss coverage as the policy terms in form 5100FL.  USAA has issued CRA Endorsements in each of the 50 states with terms that are materially identical.

35.     USAA has issued CRA on form A402FL(01) since shortly after the FOIR approved the form on June 23, 2014.

36.     Each PPA physical damage policy issued by USAA during the period five years before the filing of this lawsuit through the present has had the same material policy terms covering total losses.

37.     All CRA Endorsements issued by USAA at any time during the period five years before the filing of this lawsuit through the present have had material terms that are the same as the CRA Endorsement issued to Plaintiff.

**B.  The Policy Requires USAA to Pay ACV for a Total Loss Vehicle.**

38.     The Policy provides comprehensive and collision coverage with a coverage limit of ACV, under the following terms:

**AGREEMENT**

In return for payment of the premium and subject to all the terms of this policy, we will provide the coverages and limits for which a premium is shown on the Declarations.

Ex. A at 3.

39.    The Policy provides the following definitions of ACV and Loss under PPA physical damage comprehensive and collision coverage:

### PART D - PHYSICAL DAMAGE COVERAGE

**DEFINITIONS**

A.   "**Actual cash value**" means the amount that it would cost, at the time of **loss**, to buy a comparable vehicle. As applied to **your covered auto**, a comparable vehicle is one of the same make, model, model year, body type, and options with substantially similar mileage and physical condition.

 ….

D.   "**Loss**" means direct and accidental damage to the operational safety, function, or appearance of, or theft of, **your covered auto** or personal property contained in **your covered auto. Loss** includes a total loss but does not include any damage other than the cost to **repair** or replace. **Loss** does not include any loss of use, or diminution in value that would remain after repair or replacement of the damages or stolen property.

Ex. A at 21 (emphasis in original).[1]

40.    The Policy promises the following:

**INSURING AGREEMENT**

A.   Comprehensive Coverage (excluding **collision**).

   1.   Physical damage. **We** will pay for **loss** caused by other than **collision** to **your covered auto**, including its equipment, and personal property contained in **your covered auto**, minus any applicable deductible shown on the Declarations….

….

B.   Collision Coverage.  **We** will pay for **loss** caused by **collision** to your **covered auto**, including its equipment, and personal property contained in **your covered auto**, minus any applicable deductible shown on the Declarations.

Ex. A at 22.

41.    The limit of liability in the Policy is ACV:

---

[1] All emphasis in quoted language from the Policy is in the original Policy.

**LIMIT OF LIABILITY**

A. Total loss to **your covered auto**. **Our** limit of liability under Comprehensive Coverage and Collision Coverage is the **actual cash value** of the vehicle, inclusive of any **custom equipment.**

    1. The maximum amount **we** will include for **loss** to **custom equipment** in or on **your covered auto** is $ 5,000.

    2. **We** will declare your **covered auto** to be a total loss if, in **our** judgment, the cost to **repair** it would be greater than its **actual cash value** minus its salvage value after the **loss.**

Ex. A at 23.

    42.    The Policy defines **your covered auto** as follows:

O. **"Your covered auto"** means:

    1. Any vehicle shown on the Declarations.

    2. Any **newly acquired vehicle.**

    3. Any **trailer you** own.

Ex. A at 4.

    43.    The Policy provides:

**PAYMENT OF LOSS**

**We** may pay for **loss** in money, or **repair** or replace the damaged or stolen property. **We** may at **our** expense, return any stolen property to **you** or to the address shown on the Declarations. If **we** return stolen property **we** will pay for any damage resulting from the theft.  **We** may keep all or part of the damaged or stolen property and pay **you** an agreed or appraised value for it.  **We** cannot be required to assume

the ownership of damaged property.  **We** may settle a claim either with **you** or with the owner of the property.

Ex. A at 23.

44.     There is no difference, for purposes of the duty to pay ACV on a first party total loss claim, between a collision total loss claim and a comprehensive total loss claim.

45.     The Policy provides:

**LOSS PAYABLE CLAUSE**

**Loss** or damage under this policy will be paid, as interest may appear, to the named insured and the loss payee shown on the Declarations. This insurance, with respect to the interest of the loss payee, will not become invalid because of **your** fraudulent acts or omissions unless the loss results from **your** conversion, secretion, or embezzlement of **your covered auto. We** may cancel the policy as permitted by policy terms and the cancellation will terminate this agreement as to the loss payee's interest. **We** will give the same advance notice of cancellation to the loss payee as **we** give to the named insured shown on the Declarations. **We** may send notices to the loss payee either by mail or by electronic means. However, if the loss payee requests in writing that **we** not send notices, including a notice of cancellation, **we** will abide by that request. When **we** pay the loss payee **we** will, to the extent of payment, be subrogated to the loss payee's rights of recovery.

Ex. A at 24.  The Loss Payable Clause purports to permit USAA to make insurance payments to non-insureds who are loss payees (such as lienholders).  But importantly, this clause is limited to payments for "loss" or "damage," and not other payments such as CRA.

**C. The Policy Requires USAA to Make a CRA Payment that is Separate from and in Addition to Loss of the Insured Vehicle.**

46.     Plaintiff's Policy includes a CRA Endorsement that provides:

3.  If Car Replacement Assistance is shown on the Features Declarations for this **your covered auto**, **we** will pay an additional 20% of the **actual cash value** of the vehicle at the time of a total loss. This additional amount:

a.  Is separate from the limit available for **loss** to **your covered auto** under Comprehensive Coverage or Collision Coverage; and

b.  Is available if the total loss is paid:

- 11 -

(1) Under this policy's Comprehensive Coverage or Collision Coverage; or

(2) Because of the **PD** by or on behalf of persons or organizations who may be legally responsible.

Ex. B, CRA Endorsement at 2.

47.     The CRA 20% payment is not a "loss" or "damage" payment under the Loss Payable clause because CRA is not paid for loss or damage.  In fact, it is *only* paid if total loss already has been separately paid.  *See* Loss Payable Clause.

48.     The CRA 20% payment also is not proceeds of collateral because it exceeds the value of the total loss vehicle.

**D. Plaintiff Suffered a Total Loss that Required USAA pay CRA Funds to Plaintiff.**

49.     On or about July 22, 2019, Plaintiff Fuller's Insured Vehicle was involved in a collision that rendered the vehicle a total loss.

50.     Plaintiff Fuller was entitled to recovery of ACV for his total loss under the policy with USAA, as well as a "separate" and "additional" CRA payment in the amount of 20% of ACV to assist with replacing the vehicle.

51.     USAA determined that Plaintiff Fuller's vehicle was a total loss.

52.     USAA requested that its third-party vehicle valuation vendor CCC Information Services, Inc. perform a Market Valuation Report.

53.     The Market Valuation Report provided the following vehicle valuations:

| | |
|---|---|
| Base Vehicle Value | $  13,862.00 |
| Adjusted Vehicle Value | $ 13,862.00 |
| Vehicular tax (6.3607%) | +$ 881.72 |
| Total | $ 14,743.72 |

The total may not represent the total of the settlement as other factors (e.g. license and fees) may need to be taken into account.

*Id.*

54.     USAA paid Plaintiff Fuller for his total loss in the amounts that are set out in "Claim and Payment Information" document provided by USAA:

| | |
|---|---|
| Payment: | |
| Vehicle's actual cash value: | $ 13,862.00 |
| Sales tax: | $    881.72 |
| Car Replacement Assistance | $ 2,948.74 |
| Partial or Prior Payments: | $  0.00 |
| Title Fee: | $77.25 |
| License Plate Fee: | $0.00 |
| Collision Deductible: | -$ 500.00 |
| Net Total: | $ 17,269.71 |

55.     Plaintiff Fuller does not challenge any of the valuations set forth in the Market Valuation Report. Plaintiff asserts only a policy interpretation issue—whether the Policy requires USAA to pay him CRA funds as required by the Policy language.

**E.  USAA Improperly Failed to Pay Plaintiff CRA Payments.**

56.     Plaintiff purchased the Fuller Insured Vehicle from Carvana LLC pursuant to a retail installment contract.

57.     Instead of issuing the CRA payment to Plaintiff as required by the Policy, USAA issued two payments to the company servicing the retail installment contract for Carvana LLC. The first payment, for $14,320.97, was under the collision coverage for the Fuller Insured Vehicle ACV (base value of $13,862.00, plus sales tax of $881.72, plus title fee of $77.25, minus deductible of $500.00 equals $14,320.97).   Ex. D, Proof of Payment. Second, USAA paid the servicing company $2,948.74, which was the separate and additional CRA funds that USAA, under the Policy, was required to pay to Fuller. *Id.* The two payments total $17,269.71. ($14,320.97 + $2,948.97). *Id.*

58.     USAA improperly withholds payments to Plaintiff and Class Members on the grounds that such payments are collateral proceeds under the Uniform Commercial Code of Florida and all 50 states.

59.     Carvana LLC had a lien on the total loss vehicle only and had no interest or right to the CRA payment, which was not insurance covering the loss of the vehicle.

60.     Plaintiff was damaged by this breach of the Policy by USAA's failure to pay Plaintiff full CRA of $2,948.74.

61.     USAA profits and benefits from its practice of paying the CRA to lienholders because the lienholders are willing to accept less for the actual cash value of the vehicle if the lienholders get the CRA, which is 20% over and above the actual cash value.

62.     Plaintiff was harmed immediately upon the payment of CRA funds to Carvana LLC (rather than payment of such funds to him). It is irrelevant to USAA's obligations and duties under the Policy whether Carvana LLC had a non-secured claim against Fuller for a shortfall in a loan amount. Even if there were a shortfall, USAA was obligated to pay the CRA funds to Plaintiff, not the lienholder.

63.     USAA's breach of the CRA endorsement deprived Plaintiff of an emergency fund of cash to use for a down payment on his replacement vehicle.

64.     Plaintiff demanded that USAA pay the CRA to Plaintiff.  USAA refused such demand.

**F.  USAA Admits That It Improperly Withheld CRA Payments and Has Provided No Accounting of Funds it Improperly Withheld.**

65.     Almost one year after the July 22, 2019 total loss, USAA sent on July 1, 2020 a payment to Plaintiff for $17.67 purporting to be a "Payment under Car Replacement Assistance." It is unclear how this payment was calculated and what this payment represented.

66.     This payment shows that – even under USAA's proposed method of calculating amounts due under CRA – USAA still withholds funds from Plaintiff and Class Members.

67.     The amount of $17.67 does not represent the proper amount owed to Plaintiff even under USAA's method of paying CRA.

68.     USAA improperly calculates CRA payments to Plaintiff and Class Members, which such improper calculations are continuing injuries.

**G. USAA Issues Policies with the Same Material Terms Relating to Coverage for Total Losses and CRA in All 50 States.**

69.     USAA issues policies with the same material terms providing coverage for total losses and providing CRA in each of the 50 states.

70.     The applicable Uniform Commercial Code provisions relevant to Plaintiff's and nationwide Class Members' claims are the same in each of the 50 states.

## V.   CLASS ACTION ALLEGATIONS

71.     Plaintiff asserts claims pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of himself and the following putative class (the "Class") and subclass (the "Subclass"):

### THE USAA CLASS

All persons who were insured by Defendant USAA General Indemnity Company under a policy for private passenger auto physical damage issued in the United States, who purchased Car Replacement Assistance, and suffered a first party total loss of a covered vehicle at any time during the 5 years prior to the filing of this lawsuit through the date that any class is certified by this Court, whose claim was adjusted by USAA as a total loss claim, and whose claim resulted in USAA paying all or part of the Car Replacement Assistance payment to a lienholder.

### THE USAA FLORIDA SUBCLASS

All persons who were insured by Defendant USAA General Indemnity Company under a Florida policy for private passenger auto physical damage, who purchased Car Replacement Assistance, and suffered a first party total loss of a covered vehicle at any time during the 5 years prior to the filing of this lawsuit through the date that any class is certified by this Court, whose claim was adjusted by USAA

as a total loss claim, and whose claim resulted in USAA paying all or part of the Car Replacement Assistance payment to a lienholder.

Excluded from the Class are all officers and employees of USAA and all of their affiliates, parents, and subsidiaries; all persons who make a timely election to be excluded from the Class; government entities; and the judges to whom this case is assigned and their immediate family and court staff.

**A. Provisions of Rule 23 Under Which the Claim is Maintainable on Behalf of the Class and Subclass.**

72.     Plaintiff's claims are maintainable on behalf of the Class pursuant to Federal Rule of Civil Procedure 23(b)(2) and (3).  Plaintiff's claims satisfy Federal Rule of Civil Procedure 23(a) as to commonality, typicality, numerosity, and adequacy.

**i.     The Questions of Law or Fact that are Common to the Claim or Defense of Plaintiff and the Claims or Defense of Each Class Member.**

73.     Common questions of law and fact exist and predominate over any question affecting only individual Class Members.  The Class and Subclass claims are on behalf of only those persons who purchased CRA, suffered a total loss, and for whom USAA made CRA payments to a lienholder.

74.     The issues of law involve the application of the Uniform Commercial Code (which has the same relevant provisions in Florida and each of the 50 states) and the interpretation of policy forms with identical material language including the CRA Endorsement. The insurance contract, including the endorsement, has material language that is common to all members of the Class.  USAA and all members of the Class are bound by the same material terms of Policy form and the CRA Endorsement, and the central issues in the case all involve interpretation of the same material and controlling terms.  These common legal and factual questions, which exist without

regard to the individual circumstances of any Class Member, include, but are not limited to, the following:

(a) Whether the Policy permits USAA to make CRA payments to lienholders;

(b) Whether USAA paid CRA payments to lienholders; and

(c) The amounts of the improper CRA payments.

ii. **The Particular Facts and Circumstances that Show the Claim or Defense Advanced by Plaintiff is Typical of the Claim or Defense of Each Class Member.**

75.     Plaintiff's claims are typical of the claims of each Class Member.  Plaintiff's claims and the claims of each Class Member arise from the same core practice: USAA's payment of CRA to lienholders on total loss claims.  Plaintiff's claims are based upon the same legal theories as those of the Class Members.  Plaintiff suffered the same harm as all the other Class Members: the loss of CRA payments due under the Policy.

iii. **The Approximate Number of Class Members.**

76.     Plaintiff estimates that the Class includes over 5,000 members, and the Subclass includes over 100 Class Members.  This estimate is based on the belief that the CRA program was heavily marketed by USAA, a substantial percentage of USAA insureds were insured with the CRA Endorsement, and a substantial percentage of those insureds had outstanding liens at the time of total loss.  Moreover, a review of online complaints shows that this illegal practice by the USAA Group is widespread.  https://www.facebook.com/USAA/posts/my-wifes-car-was-declared-totaled-from-the-recent-hail-storms-8-31-18-my-coverag/10156769746829664/ (last reviewed 11/02/20).

     **iv.    Facts and Circumstances Showing Plaintiff Will Fairly and Adequately Protect and Represent the Interests of Each Member of the Classes.**

77.    Plaintiff is an adequate representative of the proposed Class because his interests do not conflict with the interests of the Class Members he seeks to represent, and Plaintiff will fairly and adequately protect the interests of the Class.  Plaintiff's interests are coincident with, and not antagonistic to, absent Class Members' interests because by proving his individual claims, he will necessarily prove the liability of USAA to Class Members as well.  Plaintiff is also cognizant of, and determined to, faithfully discharge his fiduciary duties to the absent Class Members as their representative.

78.    Plaintiff's counsel are experienced in litigating consumer and insurance class actions and complex disputes.  Plaintiff's counsel do not have any conflict with the interests of the Class and are committed to vigorously prosecuting this action.

**B.  This Class Action is Properly Maintained Pursuant to Fed. R. Civ. P. 23(b)(2).**

79.    USAA has acted against all Class Members by improperly paying CRA to lienholders, so that final injunctive relief or corresponding declaratory relief sought in Count II is appropriate respecting the class as a whole.

80.    USAA continues this improper practice in breach of the Policies and continues to withhold funds improperly from Plaintiff and Class Members.

**C.  This Class Action is Properly Maintained Pursuant to Fed. R. Civ. P. 23(b)(3).**

81.    Questions of law or fact common to class members predominate over any questions affecting only individual members.

82.    A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

83. The expense of litigation for a claim of this type substantially reduces class members' interests in individually controlling the prosecution of separate actions.

84. This is the first case of which Plaintiff is aware raising the claims presented herein. Plaintiff is aware of many complaints relating to USAA's practice. In some instances, USAA has bowed to pressure from complaints and paid CRA amounts to the insured instead of the lienholder.

85. There is no factor of which Plaintiff is aware making this forum undesirable.

86. This matter is properly maintainable as a class action.

## COUNT I - BREACH OF CONTRACT

### (on behalf of the Class and Subclass)

87. Plaintiff incorporates by reference all prior paragraphs as though fully set forth herein.

88. Plaintiff and each Class Member was a party to an insurance contract with USAA that included the CRA Endorsement.

89. The material provisions of PPA insurance contracts, including the CRA Endorsement, as outlined above, are identical for Plaintiff and all Class Members.

90. The interpretation of all such insurance contracts is governed by common law, and in this case, the application of the Uniform Commercial Code.

91. Plaintiff and each Class Member complied with all duties under the Policies to entitle them to CRA payments after their total loss.

92. Plaintiff and each Class Member had their claims determined by USAA to be covered first party total losses under their insurance contract.

93. USAA made CRA payments to lienholders after Plaintiff and each Class Member submitted covered total loss claims.

94.     The CRA did not insure the total loss vehicles and thus CRA payments were not proceeds of the collateral secured by the lien on Plaintiff's and each Class Member's total loss vehicles.

95.     USAA, by paying on the total loss claim and making CRA payments, determined that each Plaintiff and each Class Member complied with the terms of their insurance contracts and fulfilled their duties that the insurance contracts imposed for them to be paid their CRA.

96.     Plaintiff's and each Class Member's insurance contract required USAA to pay the CRA payments to Plaintiff and the Class Member.

97.     USAA breached the Policies by failing to pay the CRA to Plaintiff and Class Members and paying instead lienholders.

98.     Plaintiff and the Class Members have suffered monetary damages caused by USAA's insurance contract breaches.

99.     Plaintiff, individually and on behalf of all others similarly situated, seeks applicable damages, costs, and attorney's fees.

## COUNT II - DECLARATORY JUDGMENT (28 U.S.C. § 2201)

### (on behalf of the Class and Subclass)

100.    Plaintiff incorporates by reference all prior paragraphs as though fully set forth herein.

101.    Plaintiff and all Class Members were covered insureds under Policies with USAA.

102.    Plaintiff remains a USAA insured.

103.    Plaintiff and each Class Member made a claim under their Policy that USAA determined to be a first-party total loss covered claim.

104.    The material provisions of PPA insurance contracts, including the CRA

Endorsement, as outlined above, are identical for Plaintiff and all Class Members.

105.    The interpretation of all such insurance contracts is governed by common law, and in this case, the application of the Uniform Commercial Code.

106.    Plaintiff and each Class Member complied with all duties under the Policies to entitle them to CRA payments after their total loss.

107.    Plaintiff and each Class Member had their claims determined by USAA to be covered first party total losses under their insurance contract.

108.    USAA paid CRA to lienholders after Plaintiff and each Class Member submitted covered total loss claims.

109.    The CRA did not insure the total loss vehicles and thus the CRA payments were not proceeds of the collateral secured by the lien on Plaintiff's and each Class Member's total loss vehicles.

110.    Plaintiff's and each Class Member's insurance contract required USAA to pay the CRA to Plaintiff and the Class Member.

111.    USAA breached the Policies by failing to pay CRA to Plaintiff and Class Members and paying instead the lienholders.

112.    USAA's Policy breaches are based on its interpretation that the CRA is insurance for the total losses, and/or that the CRA payment constitutes proceeds of the total losses payable to parties with security interests in the total losses.

113.    Plaintiff and the Class Members have suffered actual injury and monetary damages caused by USAA's insurance contract breaches.

114.    There is a substantial, continuing controversy between Plaintiff and Class Members, and USAA.  The injuries and damages suffered by Plaintiffs and Class Members are

real and there is a reasonable expectation and substantial likelihood that the injuries will continue and be repeated.

115.    The Court should declare that: (1) lienholders do not have a security interest in CRA payments under the Florida Uniform Commercial Code, and the Uniform Commercial Code of each of the 50 states; (2) CRA payments are not insurance coverage for loss to the vehicle; (3) CRA payments are not payments that are for the value of the total loss vehicles; (4) CRA payments are for amounts in excess of the value of total loss vehicles; (5) CRA payments are not proceeds of collateral under the Florida Uniform Commercial Code and the Uniform Commercial Code of each of the 50 states; and (6) CRA payments are required to be paid to insureds under the Policies.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class Members, prays for relief and judgment as follows:

A.    For an order certifying this action as a class action on behalf of the Class described above;

B.    For an award of compensatory damages for all amounts wrongfully withheld;

C.    For damages according to proof for each of the Counts as outlined above;

D.    For a declaration that CRA payments are not insurance coverage for loss to the vehicle and not payments that are for the value of the total loss vehicles, and that such payments are for amount in excess of the value of the total loss vehicles;

E.    For an award of attorney's fees as appropriate pursuant to applicable law (including but not limited to Fla. Stat. § 627.428);

F.    For expenses and costs of suit incurred;

G.    For both pre- and post-judgment interest on any amounts awarded;

- 22 -

H.      For such other and further relief as the Court may deem proper; and

I.      Trial by jury of all issues triable.

Dated this 3rd day of November 2020.

s/Tracy L. Markham
Tracy L. Markham
Florida Bar No. 0040126
Southern Atlantic Law Group, PLLC.
2800 N 5th Street, Suite 302
St. Augustine, Florida 32084
Phone: (904) 794 7005
Facsimile: (904) 794 7007
tlm@southernatlanticlaw.com
pleadingsonly@southernatlanticlaw.com

Christopher B. Hall
Georgia Bar No. 318380
Motion to Appear Pro Hac Vice to be filed
Hall & Lampros, LLP
400 Galleria Parkway, Suite 1150
Atlanta, GA 30339
Phone: (404) 876-8100
Facsimile: (404) 876-3477
chall@hallandlampros.com